IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(KANSAS CITY DOCKET)

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | No. | 11-20133-01-05-KHV-JPO |
| | ) | | |
| **DAVID P. DRAKE,** | ) | **UNDER SEAL** | |
| **DONALD D. SNIDER, JR.,** | ) | | |
| **VICKIE A. HALL,** | ) | | |
| **HEATHER A. GIBBS, and** | ) | | |
| **JAMES B. CLARKSON** | ) | | |
| | ) | | |
| Defendants. | ) | | |
| | ) | | |

# INDICTMENT

The Grand Jury Charges:

At all times relevant to the charges in this Indictment:

## INTRODUCTION

1.     Western Site Services (WSS) was a company controlled by

defendants David P. Drake, Donald D. Snider, Jr., Vickie A. Hall, and Heather A.

Gibbs.

2.     Northshore Investments, LLC (Northshore), was a company

controlled by defendants David P. Drake, Donald D. Snider, Jr., and Heather

Gibbs.

3.     "My Investing Place" (MIP) was a company operating from the Salt

Lake City, Utah area.

4.     Tri-Global Development, LLC, (Tri-Global) was a company owned and controlled by defendants David Drake and Donald Snider, Jr.

5.     Colorado Modular Home Finders (CMH) was a company owned by Vickie Hall.

6.     Columbian Bank and Trust (Columbian),  Wells Fargo Bank (Wells Fargo), and Lawrence Bank were financial institutions as defined by Title 18, United States Code, Section 20.

7.     Indian Ridge Resort (Indian Ridge) was a resort community located near Branson, Missouri, that had not been fully developed.

8.     Defendants David Drake (Drake) and Vickie Hall (Hall) were husband and wife.

9.     Defendants Donald Snider, Jr. (Snider) and Heather Gibbs (Gibbs) were husband and wife.

10.    Defendant James B. Clarkson (Clarkson) worked as a mortgage broker.

## THE CONSPIRACY

11.    Defendants David Drake and Donald Snider, Jr., through Northshore, entered into an arrangement with another person to purchase Tract 34 at Indian Ridge for $3,260,000.

12.    The defendants began seeking "investors" to obtain loans for the

2

purchase of Tract 34 property in Indian Ridge.

13.     Defendants Drake and Snider entered into an arrangement with the operators of MIP.  Under the arrangement, MIP obtained individuals, referred to as "credit-partners" to "invest" in the purchase of lots in Tract 34 and the construction of condos and houses in Indian Ridge, which were to be built by WSS.  MIP was given a $5,000 commission for each loan in which they provided the borrower.

14.     In addition to agreeing to locate "credit-partners," one principal with MIP agreed to act as a "credit-partner" himself, taking out loans for four properties in Indian Ridge.

15.     The "credit-partners" obtained construction loans in their names. The "credit-partners" were told they would not have to repay the loans and they would receive approximately $10,000 per loan.  The "credit-partners" were also told they would not have to pay a down-payment for the loan, or make any of the loan payments. The "credit-partners" purchased the lots for $135,000 each from Northshore.

16.     The defendants never informed the "credit-partners" that Northshore was controlled by defendants Drake, Snider, and Gibbs.

17.     Persons who agreed to be "credit-partners" applied for construction loans, which were funded by Columbian, Wells Fargo, and Lawrence Bank.   At least 51 such loans were obtained.  Columbian held 28 notes, Wells Fargo held

3

16, and Lawrence Bank held 7.

18.     Defendant James B. Clarkson was a mortgage broker with Top Flight Mortgage.  Defendants Drake and Snider used Clarkson to broker the "credit-partner" loans for the Indian Ridge project.  Clarkson assisted the "credit-partners" by putting together loan applications that were submitted to the bank.

19.     In the loan applications submitted to Columbian and Wells Fargo, Clarkson falsely listed the loan broker as "Shawn Johnson" because Clarkson was not licensed as a mortgage broker in Missouri or Kansas.

20.     In some of the Indian Ridge project loan applications defendant Clarkson submitted, Clarkson stated the borrowers made more money than they actually earned, to ensure the borrower qualified for the loan.

21.     Columbian, Wells Fargo, and Lawrence Bank relied upon the information in the loan applications submitted by Clarkson in determining whether to approve the loans for the Indian Ridge Project.

22.     The defendants caused letters to be sent to Wells Fargo and Lawrence Bank stating  "credit-partners" had paid an initial down payment, which was a false statement because no down payments were actually made.

23.     WSS was supposed to construct the buildings on Tract 34 in Indian Ridge.  To fund the construction, WSS was required to submit invoices after work was completed.  The invoices were referred to as "loan draws."

24.     WSS submitted invoices for loan draws for work that was either

4

never performed, or the invoices grossly overstated the true value of the work. For instance, WSS submitted loan draws for $8,258,565.93, which is approximately 76% of the total loans funded by Columbian.  However, only 13 of the 28 properties with notes held by Columbian had any work performed on the property.  None of the 28 properties were completed.

25.    Defendant Victoria Hall set up CMH, which was purported to be a manufacturer of modular constructed buildings.   However, as it related to the Indian Ridge project, CMH was used for the sole purpose of submitting false invoices.  Defendants Drake and Hall submitted invoices for modular buildings allegedly provided by CMH for the Indian Ridge project, however, no modular construction was used at Indian Ridge Tract 34.

26.    The proceeds from the loan draws were submitted by the banks to WSS.  Defendant Heather Gibbs deposited the funds into a WSS account. Instead of being used to pay for expenses related to the Indian Ridge project, the defendants used the loan money for personal expenses and business expenses for projects not related to the Indian Ridge project.

27.    All of the Indian Ridge loans were defaulted upon.

28.    Columbian failed as a financial institution on August 22, 2008, and the loans it issued related to the Indian Ridge project were placed in receivership.

## COUNT ONE
## THE BANK FRAUD CONSPIRACY

29.     Paragraphs 1 through 28 are incorporated and realleged herein.

30.     During the period from in or around January 2006, and continuing until in or around August 2008, the exact dates being unknown, in the District of Kansas and elsewhere, the defendants,

**DAVID P. DRAKE,**
**DONALD D. SNIDER, JR.,**
**VICKIE A. HALL,**
**HEATHER A. GIBBS, and**
**JAMES B. CLARKSON,**

knowingly and willfully combined, conspired, confederated and agreed with each other and with other persons known and unknown to the Grand Jury to commit and conceal offenses against the United States, by devising a scheme and artifice to defraud Columbian, Wells Fargo, and Lawrence Bank, all of which were financial institutions, and to obtain money owned and under the custody and control of Columbian, Wells Fargo, and Lawrence Bank, by means of materially false and fraudulent pretenses and promises, in violation of Title 18, United States Code, Sections 1344 and 2.

**OBJECT OF THE CONSPIRACY AND MANNER AND MEANS**

31.     The object of the conspiracy and scheme to defraud was to enrich the conspirators by submitting materially false and fraudulent loan draws to obtain loan money for work that was never actually performed.

32.     As part of the conspiracy, and in furtherance of it, the defendants obtained "credit-partners" who agreed to obtain loans for the construction of condos and houses in Indian Ridge.  The defendants told the "credit-partners" they would not have to provide a down-payment for the loan and would not be required to make the loan payments.

33.     It was further part of the conspiracy and in furtherance of it that the conspirators submitted loan draws to Columbian, Wells Fargo and Lawrence Bank for construction work that was never performed, in violation of the loan agreement.

## OVERT ACTS

34.     It was part of the conspiracy and in furtherance of it the defendants committed and caused to be committed and aided and abetted the following acts:

35.     On or about January 25, 2007 and February 20, 2007, defendant Victoria Hall used CMH for the purpose of submitting false invoices for loan draws related to the Indian Ridge project.

**David and Cori B.**

36.     In or around January 2007, the exact date being unknown, defendant Clarkson prepared and caused to be prepared loan applications for David B. and Cori B. for the purchase of four properties in Indian Ridge.

37.     On or about January 8, 2007, David and Cori B. obtained loans for Indian Ridge Resort lots 31A, 31B, 32A, and 32B in the Indian Ridge project, for $396,000 each.

7

38.    On or about January 25, 2007, defendants Drake and Snider submitted to Columbian four construction loan draw requests and invoices in the amount of $86,058.30 each for Indian Ridge lots 31A, 31B, 32A, and 32B.  The draw requests and invoices were submitted for $34,195.50 for each of the four lots payable to WSS for engineering costs, a building permit, water and sewer tap fees, and project management fees; and $51,862.80 each to CMH for down-payments.  The draw requests and invoices were false because they overstated the costs of the construction or the work was never performed.

**Ed and Lisa C.**

39.    In or around January 2007, the exact date being unknown, defendant Clarkson prepared and caused to be prepared loan applications for Ed and Lisa C. for the purchase of three properties in Indian Ridge.

40.    On or about January 8, 2007, Ed and Lisa C. obtained loans for Indian Ridge Resort lots 63A, 63B, and 73B in the Indian Ridge project, for $388,000 each.

41.    On or about January 25, 2007, defendants Drake and Snider submitted to Columbian three construction loan draw requests and invoices in the amount of $82,929.20 each for Indian Ridge lots 63A, 63B, and 73B.  The draw requests and invoices were submitted for $30,999.20 for each of the three lots payable to WSS for engineering costs, a building permit, water and sewer tap fees, and  project management fees; and $51,930 each to CMH for down-

payments.  The draw requests and invoices were false because they overstated the costs of the construction or the work was never performed.

**Eric and Jyl C.**

42.    In or around January 2007, the exact date being unknown, defendant Clarkson prepared and caused to be prepared loan applications for Eric and Jyl C. for the purchase of two properties in Indian Ridge.

43.    On or about January 8, 2007, Eric and Jyl C. obtained loans for Indian Ridge Resort lots 14A and 14B in the Indian Ridge project, for $392,000 each.

44.    On or about January 25, 2007, defendants Drake and Snider submitted to Columbian two construction loan draw requests and invoices in the amount of $86,058.30 each for Indian Ridge lots 14A and 14B.  The draw requests and invoices were submitted for $34,195.50 for each of the two lots payable to WSS for engineering costs, a building permit, water and sewer tap fees, and  project management fees; and $51,862.80 each to CMH for down-payments.  The draw requests and invoices were false because they overstated the costs of the construction or the work was never performed.

**Patrick D.**

45.    In or around January 2007, the exact date being unknown, defendant Clarkson prepared and caused to be prepared loan applications for Patrick D. for the purchase of three properties in Indian Ridge.

46.     On or about January 8, 2007, Patrick D. obtained loans for Indian Ridge Resort lots 8A, 8B, and 67A in the Indian Ridge project, for $388,000 each.

47.     On or about January 25, 2007, defendants Drake and Snider submitted to Columbian three construction loan draw requests and invoices in the amount of $82,929.20 each for Indian Ridge lots 8A, 8B, and 67A.  The draw requests and invoices were submitted for $30.999.20 for each of the three lots payable to WSS for engineering costs, a building permit, water and sewer tap fees, and project management fees; and $51,930.00 each to CMH for down-payments.  The draw requests and invoices were false because they overstated the costs of the construction or the work was never performed.

**Steven and Suzanne O.**

48.     On or about September 6, 2006, at the direction of defendant Clarkson, Steven and Suzanne O. prepared and caused to be prepared loan applications for the purchase of four properties in Indian Ridge.  That same day Suzanne O. faxed the loan application to defendant Clarkson. The loan applications stated Suzanne O.'s monthly income to be $2,000.

49.     On or about October 25, 2006, defendant Clarkson faxed back typed and completed loan applications based upon the documents previously submitted by Suzanne O.  However, defendant Clarkson increased Suzanne O's monthly income to $14,250, which was a false statement.  Suzanne O. corrected the amount, and faxed the loan applications to defendant Clarkson.  However,

10

defendant Clarkson submitted loan applications with the inflated monthly income to Columbian.

50.     On or about January 8, 2007, Steven and Suzanne O. obtained loans for Indian Ridge Resort lots 70A, 70B, 71A, and 71B in the Indian Ridge project, for $388,000 each.

51.     On or about January 25, 2007, defendants Drake and Snider submitted to Columbian four construction loan draw requests and invoices in the amount of $82,929.20 each for Indian Ridge lots 70A, 70B, 71A and 71B.  The draw requests and invoices were submitted for $30,999.20 for each of the four lots payable to WSS for engineering costs, a building permit, water and sewer tap fees, and project management fees; and $51,930.00  each to CMH for down-payments.  The draw requests and invoices were false because the work was never performed.

**Dale and Darlene S.**

52.     In or around January 2007, the exact date being unknown, defendant Clarkson prepared and caused to be prepared loan applications for Dale and Darlene S. for the purchase of two properties in Indian Ridge.

53.     On or about January 8, 2007, Dale and Darlene S. obtained loans from Columbian for Indian Ridge Resort lots 22A and 22B in the Indian Ridge project, for $388,000 each.

54.    On or about February 20, 2007, defendants Drake and Snider submitted to Columbian two construction loan draw requests and invoices in the amount of $82,929.20 each for Indian Ridge lots 22A and 22B.  The draw requests and invoices were submitted for $30,999.20 for each of the two lots payable to WSS for engineering costs, a building permit, water and sewer tap fees, and  project management fees; and $51,930.00 each to CMH for down-payments.

**Greg and Sarah A.**

55.    In or around January 2007, the exact date being unknown, defendant Clarkson prepared and caused to be prepared loan applications for Greg and Sarah A. for the purchase of four properties in Indian Ridge.   Two of the loan applications were submitted to Wells Fargo and two to Columbian.  Defendant Clarkson changed the information provided by Greg and Sarah A to reflect their monthly income to be $21,000 per month, almost double their true income.

56.    On or about January 4, 2007, defendant Clarkson sent Greg A. an email, stating Clarkson had increased the monthly income to "make the ratios work."

57.    On or about February 12, 2007, Greg and Sarah A. obtained loans from Columbian for Indian Ridge Resort lots 6A and 6B in the Indian Ridge project, for $388,000 each.

58.     On or about February 20, 2007, defendants Drake and Snider submitted to Columbian two construction loan draw requests and invoices in the amount of $82,929.20 each for Indian Ridge lots 6A and 6B.  The draw requests and invoices were submitted for $30,999.20 for each of the two lots payable to WSS for engineering costs, a building permit, water and sewer tap fees, and project management fees; and $51,930.00 each to CMH for down-payments. The draw requests and invoices were false because they overstated the costs of the construction or the work was never performed.  The draw requests were dated February 8, 2007, before Greg and Sarah A. obtained the loans.   The CMH and WSS invoices submitted with the loans weredated February 6, 2007.

**Marshal and Donna S.**

59.     In or around February 2007, the exact date being unknown, defendant Clarkson prepared and caused to be prepared loan applications for Marshal and Donna S. for the purchase of four properties in Indian Ridge.

60.     On or about February 12, 2007, Marshal and Donna S. obtained loans from Columbian for Indian Ridge Resort lots 20A, 20B, 27A, and 27B in the Indian Ridge project, for $388,000 each.

61.     On or about February 20, 2007, defendants Drake and Snider submitted to Columbian four construction loan draw requests and invoices in the amount of $82,929.20 each for Indian Ridge lots 20A, 20B, 27A, and 27B.  The draw requests and invoices were submitted for $30,999.20 for each of the four

13

lots payable to WSS for engineering costs, a building permit, water and sewer tap fees, and  project management fees; and $51,930.00 each to CMH for down-payments.  The draw requests and invoices were false because they overstated the costs of the construction or the work was never performed.  The draw requests were dated February 8, 2007, before Marshal and Donna S. obtained the loans.   The CMH and WSS invoices submitted with the loans were dated February 6, 2007.

**Stephen and Jill K.**

62.    In or around February 2007, the exact date being unknown, defendant Clarkson prepared and caused to be prepared loan applications for Stephen C. and Jill K. for the purchase of four properties in Indian Ridge.

63.    On or about February 12, 2007, Stephen and Jill K. obtained loans from Columbian for Indian Ridge Resort lots 52A, 52B, 54B, and 56A in the Indian Ridge project, for $388,000 each.

64.    On or about February 20, 2007, defendants Drake and Snider submitted to Columbian four construction loan draw requests and invoices in the amount of $82,929.20 each for Indian Ridge lots 52A, 52B, 54B, and 56A .  The draw requests and invoices were submitted for $30,999.20 for each of the four lots payable to WSS for engineering costs, a building permit, water and sewer tap fees, and  project management fees; and $51,930.00 each to CMH for down-payments.  The draw requests and invoices were false because they overstated

14

the costs of the construction or the work was never performed.  The draw

requests were dated February 8, 2007, before Stephen and Jill K. obtained the

loans.   The CMH and WSS invoices submitted with the loans were dated

February 6, 2007.

65.   Count three through twenty-four are alleged as additional overt acts.

66.   This was all in violation of Title 18, United States Code, Section

1349.

## COUNT TWO
### The Money Laundering Conspiracy

67.   Paragraphs 1 through 66 above are reincorporated and realleged

herein.

68.   Liberty Savings Bank, Bank of Choice, and First Bank of Tech

Center are all financial institutions as defined by Title 18, United States Code,

Section 20.

69.   During the period from in or around January 2006, and continuing

until in or around August 2008, the exact dates being unknown, in the District of

Kansas and elsewhere, the defendants,

**DAVID P. DRAKE,
DONALD D. SNIDER, JR.,
VICKIE A. HALL,  and
HEATHER A. GIBBS,**

15

knowingly combined, conspired, and agreed with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1957 by knowingly engaging in monetary transactions by, through, and to Columbian Bank, a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is the transfer of proceeds of bank loans, such property having been derived from a specified unlawful activity, that is, bank fraud, in violation of Title 18, United States Code, Section 1344, a violation of Title 18, United States Code, Sections 1957 and 2.

## MANNER AND MEANS

70.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

71.     On or about January 25, 2007, the defendants submitted draw sheets and supporting invoices and documents to Columbian for 16 loans. The draw sheets were signed by defendants Drake and Snider.

72.     On or about February 6, 2007, Columbian issued cashier's checks to WSS in the amount of $515,165.

73.     On or about February 7, 2007, defendant Gibbs deposited $515,165 into WSS account number XX-XXXX2201 at Liberty Savings Bank.

74.     On or about the days listed below, defendant Gibbs, using the proceeds obtained from the Columbian Indian Ridge loans, wrote the following

checks from WSS account number XX-XXXX2201 at Liberty Savings Bank to

WSS.  The checks were deposited into WSS's account number XX2312 at Bank

of Choice by defendant Gibbs:

| Date | Check No. | Amount |
| --- | --- | --- |
| 2/6/2007 | 7380 | $50,000 |
| 2/9/2007 | 7383 | $200,000 |
| 2/12/2007 | 7385 | $100,000 |
| 2/15/2007 | 7386 | $150,000 |
| 2/20/2007 | 7388 | $75,000 |
| 2/23/2007 | 7392 | $50,000 |

75.    On or about the dates listed below, defendant Snider, using the

proceeds obtained from the Columbian Indian Ridge loans wrote the following

checks from WSS account number XX2312 at Bank of Choice:

| Date | Check No. | Amount | Payee |
| --- | --- | --- | --- |
| 2/7/2007 | 3573 | $15,620.00 | Brent Clarkson |
| 2/9/2007 | 3580 | $13,007.00 | Crennon & Company |
| 2/9/2007 | 3581 | $100,000.00 | My Invest |
| 2/9/2007 | 3583 | $20,278.05 | New Frontier Bank |
| 2/9/2007 | 3584 | $18,756.08 | New Frontier Bank |
| 2/14/2007 | 3606 | $11,673.75 | FlatIrons Engineering |
| 2/16/2007 | 3628 | $15,202.50 | FlatIrons Engineering |
| 2/20/2007 | 3636 | $10,135.35 | Waste Water Management |
| 2/20/2007 | 3633 | $10,360.00 | Denver Water |

| | | | |
|---|---|---|---|
| 2/23/2007 | 3643 | $12,000.00 | Brian H. |

76.     On or about February 6, 2007, Columbian issued cashier's checks to CMH totaling $830,849.74.

77.     On or about February 8, 2007, Defendant Hall deposited $830,849.74 into CMH account XXX-XXX-2799 at First Bank of Tech Center.

78.     On or about the dates listed below, defendant Hall, using the proceeds from the Columbian Indian Ridge loans, wrote the following checks from CMH account XXX-XXX-2799 at First Bank of Tech Center:

| Date | Check No. | Amount | Payee |
|---|---|---|---|
| 2/12/2007 | 101 | $450,000 | Champion Homes |
| 2/12/2007 | 102 | $100,000 | WSS |
| 2/20/2007 | 103 | $230,000 | WSS |

79.     On or about February 20, 2007, the defendants submitted draw sheets and supporting invoices and documents to Columbian for twelve loans. The draw sheets were signed by defendants Drake and Snider.

80.     On or about February 22, 2007, Columbian directly deposited $995,150.40 into WSS's bank account number XXXX4538 at Columbian.

81.     On or about March 1, 2007, defendant Snider wrote check number 3003, payable to CMH, in the amount of $623,160 from WSS's Columbian account number XXXX4538.

82.     On or about March 2, 2007, defendant Hall endorsed and deposited check number 3003 into CMH account number XXX-XXX-2799 at First Bank of Tech Center.

83.     On or about March 5, 2007, defendant Hall wrote herself check number 104 from CMH's account number XXX-XXX-2799 at First Bank of Tech Center in the amount of $50,000.

84.     On or about March 12, 2007, defendant Hall wrote check number 105 from CMH's account number XXX-XXX-2799 at First Bank of Tech Center in the amount of $300,000 to WSS.  The check was deposited into WSS's account number XX-XXX2201 at Liberty Savings Bank.

85.     On or about April 23, 2007, defendant Hall wrote check number 106 from CMH's account number XXX-XXX-2799 at First Bank of Tech Center in the amount of $300,000 to WSS.  The check was deposited into WSS's account number XX-XXX2201 at Liberty Savings Bank.

86.     On or about March 1, 2007, defendant Snider wrote check number 3004, payable to WSS, in the amount of $370,990.40 from WSS's Columbian account number XXXX4538.

87.     On or about March 1, 2007, defendant Gibbs deposited check number 3004 into WSS's account number XX-XXXX2201 at Liberty Savings Bank.

88.    On or about the dates listed below, defendant Gibbs wrote the

following checks from WSS's account number XX-XXXX2201 at Liberty Savings

Bank, to WSS.  The checks were deposited by defendant Gibbs into WSS's

account number XX2312 at Bank of Choice

| Date | Check No. | Amount |
|------|-----------|--------|
| 3/5/2007 | 7393 | $225,000 |
| 3/13/2007 | 7394 | $200,000 |
| 4/10/2007 | 7400 | $100,000 |
| 4/23/2007 | 7403 | $100,000 |

89.    On or about the dates listed below, defendant Snider wrote the

following checks from WSS's account number XX2312 at Bank of Choice:

| Date | Check No. | Amount | Payee |
|------|-----------|--------|-------|
| 2/9/2007 | 3582 | $13,455.00 | New Frontier Bank |
| 3/2/2007 | 3707 | $23,320.00 | Brent Clarkson |
| 3/5/2007 | 3708 | $30,032.28 | New Frontier Bank |
| 3/5/2007 | 3709 | $27,032.95 | New Frontier Bank |
| 3/5/2007 | 3710 | $17,391.87 | New Frontier Bank |
| 3/5/2007 | 3711 | $13,501.10 | New Frontier Bank |
| 3/5/2007 | 3713 | $12,417.70 | New Frontier Bank |
| 3/9/2007 | 3720 | $25,000.00 | Bank of Choice |
| 3/15/2007 | 3733 | $32,355.76 | Nat T. |
| 3/26/2007 | 3748 | $12,000.00 | Brian H. |
| 3/27/2007 | 3758 | $17,218.47 | Foothills Concrete Forming, Inc. |

| 4/11/2007 | 3925 | $11,640.00 | Hernandez Concrete Design, Inc. |
| 4/24/2007 | 3968 | $12,000.00 | Brian H. |
| 3/15/2007 | 3730 | $90,000.00 | My Invest |

90.    On or about the dates listed below, defendant Gibbs wrote the following checks from WSS's account number XX-XXXX2201 at Liberty Savings Bank, to WSS.  The checks were deposited into WSS's payroll account, which is account number XXX345 at Bank of Choice.

| Date | Check No. | Amount |
| --- | --- | --- |
| 3/16/2007 | 7395 | $26,000 |
| 4/2/2007 | 7399 | $27,000 |

91.    This was all  in violation of Title 18, United States Code, Section 1956(h).

## COUNT THREE
### BANK FRAUD

92.    Paragraphs 1 through 91 are reincorporated and realleged herein.

93.    During the period from in or around January 2006, and continuing until in or around August 2008, the exact dates being unknown, in the District of Kansas and elsewhere, the defendants,

**DAVID P. DRAKE,
DONALD D. SNIDER, JR.,
VICKIE A. HALL,
HEATHER A. GIBBS, and
JAMES B. CLARKSON**,

executed and attempted to execute a scheme and artifice to defraud Columbian Bank, a financial institution, and to obtain money owned and under the custody and control of Columbian, by means of materially false and fraudulent pretenses and promises.

94.    This was in violation of Title 18, United States Code, Section 1344 and 2.

## COUNTS 4-6
## MONEY LAUNDERING

95.    Paragraphs 1 through 94 are realleged and incorporated herein.

96.    On or about the dates listed below, in the District of Kansas and elsewhere, the defendant,

## VICKIE A. HALL

knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, that is, the withdrawal by check of loan proceeds from CMH's First Bank of Tech Center, bank account number XXX-XXX-2799, as set forth below, which was derived from specified unlawful activity, that is, bank fraud in violation of Title 18, United States Code Section 1344:

| Count | On or about Date | Check No. | Payee | Amount |
|-------|------------------|-----------|-------|--------|
| 4 | 2/12/2007 | 101 | Champion Homes | $450,000 |
| 5 | 2/12/2007 | 102 | Western Site Services | $100,000 |

| 6 | 2/20/2007 | 103 | Western Site Services | $230,000 |

97.   Each was in violation of Title 18, United States Code, Section 1957 and 2.

## COUNTS 7-9
## MONEY LAUNDERING

98.   Paragraphs 1 through 97 are realleged and incorporated herein.

99.   On or about the dates listed below, in the District of Kansas and elsewhere, the defendant,

## HEATHER A. GIBBS

knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, that is, the deposit of a check into  WSS's Liberty Savings Bank, bank account number XX-XXXX-2201, as set forth below, which was derived from specified unlawful activity, that is, bank fraud in violation of Title 18, United States Code Section 1344:

| Count | On or about Date | Check No. | Payee | Amount |
|-------|------------------|-----------|-------|--------|
| 7 | 2/09/2007 | 7383 | Western Site Services | $200,000 |
| 8 | 2/12/2007 | 7385 | Western Site Services | $100,000 |
| 9 | 2/15/2007 | 7386 | Western Site Services | $150,000 |

100.   Each was in violation of Title 18, United States Code, Section 1957 and 2.

**COUNTS 10-13**
**MONEY LAUNDERING**

101.   Paragraphs 1 through 100 are reincorporated and alleged herein.

102.   On or about the dates listed below, in the District of Kansas and

elsewhere, the defendant,

**DONALD D. SNIDER, JR.,**

knowingly engaged in a monetary transaction in criminally derived property of a

value greater than $10,000, that is, the withdrawal by check of loan proceeds

from  WSS's Bank of Choice, bank account number XX2312, as set forth below,

which was derived from specified unlawful activity, that is, bank fraud in violation

of Title 18, United States Code Section 1344:

| Count | On or about Date | Check No. | Payee | Amount |
|-------|------------------|-----------|-------|--------|
| 10 | 2/07/2007 | 3573 | Brent Clarkson | $15,620.00 |
| 11 | 2/09/2007 | 3581 | My Invest | $100,000.00 |
| 12 | 2/09/2007 | 3583 | New Frontier Bank | $20,278.05 |
| 13 | 2/20/2007 | 3633 | Denver Water | $10,360.00 |

103.   Each was in violation of Title 18, United States Code, Section 1957

and 2.

**COUNTS 14-15**
**MONEY LAUNDERING**

104.   Paragraphs 1 through 103 are realleged and incorporated herein.

24

105.   On or about March 1, 2007, in the District of Kansas and elsewhere, the defendant,

**DONALD D. SNIDER, JR.,**

knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, that is, the withdrawal by check of loan proceeds from  WSS's Columbian Bank and Trust, bank account number XXXX4538 as set forth below, which was derived from specified unlawful activity, that is, bank fraud in violation of Title 18, United States Code Section 1344:

| Count | Date | Check No. | Payee | Amount |
|---|---|---|---|---|
| 14 | 3/01/2007 | 3003 | CMH | $623,160.00 |
| 15 | 3/01/2007 | 3004 | Western Site Services | $370,990.40 |

106.   Each was in violation of Title 18, United States Code, Section 1957 and 2.

## COUNTS 16-18

### MONEY LAUNDERING

107.   Paragraphs 1 through 106 are realleged and incorporated herein.

108.   On or about the dates listed below, in the District of Kansas and elsewhere, the defendant,

**VICKIE A. HALL**

knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, that is, the withdrawal by check of loan proceeds from CMH's First Bank of Tech Center, bank account number XXX-XXX-2799, as set forth below, which was derived from specified unlawful activity, that is, bank fraud in violation of Title 18, United States Code Section 1344:

| Count | On or about Date | Check No. | Payee | Amount |
|-------|------------------|-----------|-------|--------|
| 16 | 3/05/2007 | 104 | Vickie Hall | $50,000 |
| 17 | 3/12/2007 | 105 | Western Sites Services | $300,000 |
| 18 | 4/23/2007 | 106 | Western Sites Services | $300,000 |

109.   Each was in violation of Title 18, United States Code, Section 1957 and 2.

## COUNTS 19-20
## MONEY LAUNDERING

110.   Paragraphs 1 through 109 are realleged and incorporated herein.

111.   On or about the dates listed below, in the District of Kansas and elsewhere, the defendant,

## HEATHER A. GIBBS

knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, that is, the deposit of a check into  WSS's Liberty Savings Bank, bank account number XX-XXXX-2201, as set forth below, which was derived from specified unlawful activity, that is, bank fraud in violation of Title 18, United States Code Section 1344:

| Count | On or about Date | Check No. | Payee | Amount |
|-------|------------------|-----------|-------|--------|
| 19 | 3/05/2007 | 7393 | Western Site Services | $225,000 |
| 20 | 3/13/2007 | 7394 | Western Site Services | $200,000 |

112.   Each was in violation of Title 18, United States Code, Section 1957 and 2.

113.   Paragraphs 1 through 112 are reincorporated and alleged herein.

## COUNTS 21-24

### MONEY LAUNDERING

114    On or about the dates listed below, in the District of Kansas and elsewhere, the defendant,

### DONALD D. SNIDER, JR.,

knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, that is, the withdrawal by check of loan proceeds from  WSS's Bank of Choice, bank account number XX2312, as set forth below,

27

which was derived from specified unlawful activity, that is, bank fraud in violation of Title 18, United States Code Section 1344:

| Count | On or about Date | Check No. | Payee | Amount |
|-------|------------------|-----------|-------|--------|
| 21 | 3/2/2007 | 3707 | Brent Clarkson | $23,320.00 |
| 22 | 3/5/2007 | 3708 | New Frontier Bank | $30,032.28 |
| 23 | 3/5/2007 | 3709 | New Frontier Bank | $27,032.95 |
| 24 | 3/15/2007 | 3730 | My Invest | $90,000.00 |

115.   This was in violation of Title 18, United States Code, Section 1957.

### FORFEITURE NOTICE & ALLEGATION

116.   Paragraphs 1 through 115, and the allegations of the foregoing counts of this Indictment, are realleged, and by this reference fully incorporated herein, for the purpose of alleging forfeitures to the United States of America, pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(c) and 982(a)(2), and Title 28, United States Code, Section 2461.

117.   As a result of the scheme alleged in the foregoing counts, involving the offenses of conspiracy to commit bank fraud in violation of Title 18, United States Code Section 1349, conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h), bank fraud in violation of Title 18, United States Code, Section 1344, and money laundering in violation of Title 18, United States Code, Section 1957, the defendants,

**DAVID P. DRAKE,**
**DONALD D. SNIDER, JR.,**
**VICKIE A. HALL,**
**HEATHER A. GIBBS, and**
**JAMES B. CLARKSON,**

shall forfeit to the United States all property, real and personal, involved in and derived from the aforesaid offenses and all property traceable to such property, or proceeds, including, but not limited to:

A)     A monetary judgment in the approximate amount of approximately $14,540,936.79, which sum represents the total amount of gross proceeds obtained as a result of the offenses.

B)     In the event any of the foregoing property: i) cannot be located upon the exercise of due diligence; ii) is transferred, sold to, or deposited with, a third party; iii) is placed beyond the jurisdiction of the Court; iv) is substantially diminished in value; or, v) is commingled with other property which cannot be divided without difficulty, as a result of any act or omission of any defendant, the Court shall order the forfeiture of any other property of the defendants, up to the value of the property described in the foregoing paragraphs.

A TRUE BILL.

DATED:   December 21, 2011          s/ Foreperson
                                    FOREPERSON

<u>s/ D. Christopher Oakley #19248 for</u>
BARRY R. GRISSOM
United States Attorney
District of Kansas
500 State Avenue, Suite 360
Kansas City, Kansas 66101
barry.grissom@usdoj.gov
(913) 551-6730
(913) 551-6541 (fax)

(It is requested that trial of the above captioned case be held in Kansas City, Kansas.)
.

**Penalties:**

Cts. 1,3,:   Class B Felony.  NMT 30 years imprisonment; NMT
$1,000,000 fine; NMT 5 years supervised release; $ 100.00
special assessment each count

Cts. 2,4-24: Class C Felony.  NMT 10 years imprisonment; $250,000 fine,
or 2x amount of criminally derived property involved in the
transaction; NMT 3 years of supervised release; $100.00 special
assessment each count